# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                 Case No. 13-CR-121

RICHARD E. JUNGEN,
ELAINE E. JUNGEN,
a/k/a ELAINE E. JAEGER,
JEROME J. POEHNELT,
and DAVID G. CHAPMAN,

    Defendants.

**DECISION AND ORDER ON MOTIONS TO QUASH OR MODIFY SUBPOENAS**

## I. BACKGROUND

Presently pending before the court is the third wave of motions to quash or modify subpoenas in this previously designated complex criminal case. Before announcing the court's ruling on the motions, a little bit of procedural background is in order.

On July 2, 2013, a grand jury sitting in the Eastern District of Wisconsin returned an indictment naming David G. Chapman ("Chapman") as the sole defendant. Shortly thereafter, on August 27, 2013, the grand jury returned a superseding indictment. The superseding indictment names as defendants not only Chapman, but also Richard E. Jungen ("Richard"), Elaine E. Jungen, a/k/a Elaine E. Jaeger ("Elaine"), and Jerome J. Poehnelt ("Poehnelt").

In Counts One through Three, each of the defendants is charged with "knowingly devis[ing] a scheme to defraud [Central States Mortgage Company, Inc. ("CSMC")] and its

credit union owners and to obtain money by means of materially false pretenses and representations." (Superseding Indict. 4-6.) "The essence of the defendants' scheme to defraud was to use funds belonging to CSMC and its credit union owners to guarantee the defendants' principal investment in the P55 pool, and to obtain bimonthly distributions of their percentage ownership of interest payments made (or not made) on sub-prime mortgages funded by the P55 pool." (Superseding Indict. 4.) Each defendant is further charged in Counts One through Three with causing to be transmitted in interstate commerce certain writings, signs, and signals by means of wire, for the purpose of executing the scheme and attempting to do so. (Superseding Indict. 6.) Counts One through Three charge violations of 18 U.S.C. § 1343 and § 2. Counts Four and Five pertain only to defendant Chapman. (Superseding Indict. 7-8.) The superseding indictment also includes a forfeiture notice seeking, among other things, "[a] sum of money in the approximate amount of $9,259,870.51 in United States currency, representing the amount of proceeds obtained as a result of the offenses charged in counts one though [sic] three." (Superseding Indict. 9.)

On December 12, 2013, the court held a scheduling conference with the parties and counsel to discuss the nature and volume of discovery, as well as to set dates for the filing of pretrial motions. At that time, the court decided to conduct another scheduling conference on February 24, 2014, in order to give the defendants some time to review the extensive amount of discovery that the government was prepared to provide to the defendants.

That same day, certain member-owned credit unions and a credit union service organization filed a motion to quash or modify subpoena that had been served by

2

defendants Richard and Elaine (hereinafter collectively referred to as "the Jungens") pursuant to Rule 17 of the Federal Rules of Criminal Procedure on Attorney Michael Polsky, the Receiver in a state court receivership proceeding relating to the failure of CSMC (as well as the Receiver's counsel, Attorney Dorothy Dey). On December 16, 2013, Prime Financial Credit Union ("Prime") filed a motion to quash a Rule 17 subpoena that had been served on it by the Jungens. On December 26, 2013, Corporate Central Credit Union ("Corporate Central") filed a motion to modify a Rule 17 subpoena duces tecum that had been served on it by the Jungens. Thereafter, the Jungens filed a consolidated response to all three motions to quash and/or modify subpoenas. The movants filed replies in support of their respective motions.

On January 31, 2014, this court issued a decision and order denying the credit unions' motion and granting Prime's motion and Corporate Central's motion, respectively. (Decision and Order of Jan. 31, 2014, at 13-14.) In denying the credit unions' motion to quash or modify subpoena, the court reasoned that the Jungens were not "embarking on a 'blind' fishing expedition in a futile effort to find a defense to the charges leveled against them." (*Id.* at 9.) Rather, the Jungens were engaged in "focused" fishing, looking for documents tending to support their defense that "the Jungens conducted matters with respect to the P55 pool no differently than they conducted matters with respect to other pools." (*Id.* at 8-9.) The court also noted the Jungens' undisputed assertion that "the physical records have been boxed up, labeled, and organized to clearly show what part of the CSMC offices the contents came from. The materials are centrally located and easily accessed, copied, and returned." (*Id.* at 9 (quoting Jungens' Br. 9-10).) In addition, there was

3

an indication that the documents in the Receiver's possession were going to be destroyed or otherwise disposed of. (*Id.* at 7.) The court granted the Prime and Corporate Central motions to quash at least in part because the documents sought by those subpoenas appeared to be a subset of the documents sought in the subpoena directed to the Receiver.

On March 13, 2014, Prime filed a "Motion to Quash or Modify Subpoena" with respect to a Rule 17 subpoena that had been served on it by the Jungens on March 7, 2014. On April 25, 2014, the court issued a decision and order granting in part and denying in part Prime's motion. (Decision and Order of Apr. 25, 2014.) More specifically, the court denied Prime's motion to quash relative to the documents regarding the P3 and P4 participation pools, and it granted Prime's motion to quash relative to the merger documents between Prime and Guardian as the defendants failed to demonstrate that these documents had any relevance to the criminal charges at issue.

Currently pending before the court are motions to quash or modify filed on August 7, 2014 by Clifford & Raihala, S.C. ("Clifford & Raihala"), and by credit unions Aurora, Glacier Hills, and Prime ("Credit Unions"), as well as a motion to quash filed on August 29, 2014 by the Government. On August 18, 2014, the Jungens filed a consolidated response to Clifford & Raihala's and the Credit Unions' motions. On September 4, 2014, Clifford & Raihala and the Credit Unions, joined by Landmark Credit Union, filed a reply. The Jungens filed a brief opposing the Government's motion on September 8, 2014. The Government has not filed a reply brief. Thus, the motions to quash or modify subpoenas that make up the third wave are now fully briefed and ready for resolution. For the reasons

4

that follow, Clifford and Raihala's and the Credit Unions' "Motion to Quash or Modify Subpoena" will be granted, and the Government's "Motion to Quash" will also be granted.

## II. DISCUSSION

Rule 17 of the Federal Rules of Criminal Procedure, which governs the use of subpoenas in criminal cases, reads, in pertinent part, as follows:

> **(a) Content.** A subpoena must state the court's name and the title of the proceeding, include the seal of the court, and command the witness to attend and testify at the time and place the subpoena specifies. The clerk must issue a blank subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served.
>
> . . . .
>
> **(c) Producing Documents and Objects.**
>
>     **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
>     **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

"A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *United States v. Nixon*, 418 U.S. 683, 698 (1974). That said, the Court in *Nixon*, citing *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951), was quick to identify "certain fundamental characteristics of the subpoena *duces tecum* in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases; (2) its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698-99 (internal citation

5

omitted). The Court in *Nixon* also noted, and both parties in that case agreed, that "cases decided in the wake of *Bowman* [had] generally followed Judge Weinberg's formulation in *United States v. Iozia*, 13 F.R.D. 335, 338 (SDNY 1952), as to the required showing" for the enforcement of a Rule 17 subpoena:

> Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."
>
> Against this background, the Special Prosecutor, in order to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.

418 U.S. at 699-700.

Rule 17 "does not permit defendants to comb through records in an effort to find a defense to a criminal charge; instead, it allows only for the gathering of specifically identified documents reasonably believed to contain evidence relevant to an admissible issue at trial." *United States v. Buske*, No. 09-CR-65, 2012 WL 5497848, at *2 (E.D. Wis. Nov. 13, 2012) (citing *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002)).

In the subpoena issued to Clifford & Raihala, the Jungens seek a broad variety of documents. The Jungens request the following:

> (1) all communications between Movant [Clifford & Raihala] and the Government related to CSMC; (2) all documents related to the Dane County Case without limitation; (3) the confidential settlement agreement in the Dane County Case and communications regarding the agreement; (4) all documents and communications in the Dane County Case regarding CSMC and Defendants; (5) all communications between Movant and CSMC's Receiver referring to Defendants and/or CSMC's loan participation pools; and (6) all

6

communications between Movant [Clifford and Raihala] and Silverman Consulting referring to Defendants and/or CSMC's loan participation pools.

(Clifford & Raihala's Mot. 2.)

The Jungens seek the following from the Credit Unions:

(1) all communications between Movants [Credit Unions] and the Government related to Defendants from March 27, 2001 to the present; (2) all communications between Movants [Credit Unions] and the Government referring to potential criminal activities or investigations involving CSMC or Movants [Credit Unions] from March 27, 2001 to the present; (3) all documents referring to potential criminal activities or investigations involving CSMC or Movants [Credit Unions] from March 27, 2001 to the present; and (4) all non-privileged documents Movants [Credit Unions] provided to legal counsel Clifford & Raihala, S.C. and/or the Receiver, between March 27, 2001 to the present.

(Credit Unions' Mot. 2.)

The Jungens' requests fail the test of specificity. The Jungens fail to provide any indication as to what they expect to find in these files. They simply request "all" documents and "all" communications related to certain categories of information. Similar requests were denied in *Buske*. In *Buske*, the court quashed as insufficiently specific subpoenas for "[a] copy of all e-mails, text messages, instant messages, letters, notes, memoranda, cell phone records, or documentation of any kind reflecting or relating to correspondence or other communication between" government agents and S.C. Johnson, as well as between S.C. Johnson's outside lawyers and S.C. Johnson, "from January 1, 2004, to the present." 2012 WL 5497848, at *2-4. The *Buske* court found that compliance with such a request would be "unduly burdensome," and it noted that "courts regularly deny/quash subpoenas phrased in this manner." *Id.* at 2, 6 (collecting cases); *see also United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (use of the word "all" is insufficiently specific); *United States v. Booth*, No. 08-

7

cr-00283, 2011 WL 6139062, at *2 (D. Nev. Dec. 9, 2011) (finding overbroad a subpoena using "the words 'any,' 'all,' and 'any and all' in many of the forty separate requests for broad categories of information").

The Jungens argue that their requests are limited in that they "relate to specific entities and/or individuals (i.e. the defendants or CSMC) and specific topics (i.e. criminal investigations) discussed in communications or documents shared with specific parties (i.e. between the credit unions and government or the CSMC Receiver)." (Jungens' Resp. Br. Opposing Gov't's Mot. 11.) However, compliance with the Jungens' subpoenas will invariably result in the production of thousands of pages of documents, illustrating the lack of specificity of their requests. For example, Clifford and Raihala maintains that its database for the *Trustone v. Wipfli* litigation consists of "approximately 40,000 files contained in nearly 600 folders," and this number does not include emails. (Reply Br. 4.) This only captures one category of information the Jungens are seeking. Other "categories" of information requested consist of "nearly a decade's worth of board minutes from over a dozen credit unions that might contain one sentence regarding the interest earned on CSMC participation pools" and "thousands of pages of spreadsheets listing the credit unions' pool participation percentages." (Reply Br. 5.) Simply stated, the Jungens' requests cannot reasonably be characterized as specific. They request "all" documents/communication/information relating to very broad categories. Rule 17(c) requires more specificity.

Also evidencing just how broad the Jungens' subpoenas are is that within the "myriad of responsive materials" requested lie many documents that are cloaked by the attorney-client privilege, work product doctrine, and confidentiality. (Jungens' Resp. Br. 7.)

Indeed, the Jungens instruct in their subpoena that Clifford and Raihala should create a "privilege log identifying what is being withheld, its author(s), date, subject matter, and reason for not producing it." (*Id.* at 7.) That the Jungens' requests capture this many potentially privileged documents illustrates that their requests are unspecific in nature. Furthermore, the sheer amount of information that Clifford and Raihala would have to review, in addition to creating a privilege log, would, in this court's view, be unduly burdensome.

The Jungens fail to specify the precise documents and/or communications that they are requesting. To allow the subpoenas to stand would be tantamount to permitting the defendants to comb through a massive amount of records in hopes that something useful might turn up. The Jungens' intention to do just this is reflected in their stated belief that "[w]ithout these documents being produced, [they] lack the ability to discover potentially exculpatory information." (Jungens' Resp. Br. Opposing Gov't's Mot. 12.) The combing through of documents is precisely what the court in *Buske* ruled against. *Buske*, 2012 WL 5497848, at \*2; *see also United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) ("[R]ule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge."). Based on their overbreadth, the Jungens' requests for "all" documents and communications resemble civil discovery requests rather than properly focused Rule 17(c) demands.[1]

---

[1] The Jungens also subpoenaed Silverman Consulting for information relating to its investigation of CSMC. All indications are that Silverman Consulting has or will comply with the subpoena. Relatedly, the court in *Buske* found that the subpoena for an internal investigation report was sufficiently specific and relevant, and thus, ordered its production. *Buske*, 2012 WL 5497848, at \*5-6.

The Jungens identify only one request with specificity: the confidential settlement agreement in the Dane County case, *Trustone v. Wipfli*. However, under Fed. R. Evid. 408, the admissibility of this document is questionable, particularly because the Jungens have not demonstrated for what purpose they seek to introduce it at trial. Thus, the motion to quash with respect to the settlement agreement will be granted.

In addition to a lack of specificity, other problems also arise with respect to the Jungens' request for all other documents and communications pertaining to the Dane County case. First, many of the documents associated with the Dane County case are publicly available. Therefore, some of these documents are procurable by other means. The defendants do not indicate that they have attempted to procure documents through publically available means or that their attempt to do so was unsuccessful. Moreover, the Government represents that discovery produced to the defendants on October 20, 2013 contained documents, including workpapers, obtained by the grand jury directly from Wipfli. To the extent that Wipfli is in possession of other documents that were not relinquished to the grand jury, the Jungens do not explain why they seek Wipfli documents from Clifford & Raihala, rather than from Wipfli itself. This is particularly significant because "Wipfli's work papers can only be produced on a computer containing a licensed version of CaseWare accounting software," and Clifford and Raihala do not own a license for the requisite software. (Clifford & Raihala and Credit Unions' Joint Reply 10-11.)

Finally, the Jungens admit that some of the documents that they seek in their third wave of subpoenas "may have some overlap" with the documents requested in the subpoena to the CSMC Receiver. (Jungens' Resp. Br. 9.) This also demonstrates the unspecific nature of their requests. The court previously denied the motion to quash the

Jungens' subpoena directed to the CSMC Receiver.  In part, and as previously stated, the court was concerned about the imminent destruction of documents in the Receiver's possession. Of course, destruction does not sidestep the requirements that a subpoena must seek relevant and admissible evidence with specificity.  That said, the subpoena requests of the CSMC Receiver were considerably more tailored than the requests at issue here.  For example, the Jungens requested of the Receiver meeting minutes, bylaws, operating agreements, pool participation agreements, reports, and office and desk files.  The court acknowledged that the Jungens had cast their net wide, but it still found that the Jungens were on a "focused fishing" expedition.[2]  The language of the subpoenas that the movants seek to quash in this third wave of motions would seem to suggest that is no longer the case. Instead, the Jungens' requests are tantamount to demands to "give us everything you've got."[3]

The court is very mindful of the defendants' right to prepare for and present a defense; however, the court also has a duty to prevent defendants from improperly utilizing Rule 17 as a vehicle for discovery.

**NOW THEREFORE IT IS ORDERED** that Clifford and Raihala's motion to quash or modify (ECF No. 93) the Rule 17 subpoena issued to it be and hereby is **GRANTED**;

---

[2] Likewise, the Jungens' second subpoena directed to Prime differed from the requests contained in the Jungens' third wave of subpoenas in that it requested information relating to Prime's role in the liquidation of certain participation pools.  Restricting the request to documents related to one party's role in a specific event, i.e. liquidation of a participation pool, is markedly more specific than simply requesting all communications and/or documents referring to those participation pools, which is what the Jungens are presently seeking with their third wave of subpoenas.

[3] Because the Jungens' subpoena requests lack specificity, it is not possible to make any relevancy or admissibility determinations.

11

**IT IS FURTHER ORDERED** that the credit unions's (Aurora, Glacier Hills, and Prime) motion to quash or modify (ECF No. 94) the Rule 17 subpoena issued to them be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the United States of America's motion to quash (ECF No. 104) be and hereby is **GRANTED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a) (as amended effective December 1, 2009), whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

**SO ORDERED** this 30th day of September 2014 at Milwaukee, Wisconsin.

                                      **BY THE COURT:**

                                      s/ William E. Callahan, Jr.
                                      WILLIAM E. CALLAHAN, JR.
                                      United States Magistrate Judge